UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X

| | | |
|---|---|---|
| ALEXANDER SPILLMAN, | : | |
| Plaintiff, | : | **REPORT AND RECOMMENDATION** |
| -against- | : | 07 Civ. 2164 (DAB)(KNF) |
| CITY OF YONKERS, ET AL., | : | |
| Defendants. | : | |

---------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE DEBORAH A. BATTS, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Alexander Spillman ("Spillman"), proceeding pro se, brings this action, pursuant to 42 U.S.C. § 1983 ("§ 1983") against the City of Yonkers ("City"), Police Officer Atkins ("Atkins"), Police Officer Jeffrey Ciruzzi ("Ciruzzi"), Police Officer McGartland ("McGartland"), Police Officer William Pataky ("Pataky"), Police Officer Rubin ("Rubin") and Police Officer Robert Wilt ("Wilt")(collectively "officer defendants"). Spillman alleges rights secured to him by the Fourth and Fifth Amendments to the Constitution, as well as New York law,[1] were violated, when the officer defendants arrested him falsely, without probable cause, and, in doing so, employed excessive force. Spillman also alleges the City failed to train the officer defendants, which occasioned their use of excessive force and caused them to effect the false arrest. Furthermore, the plaintiff contends an officer attempted to place his life in jeopardy, when the officer instructed him to enter into rush hour traffic to retrieve a lollipop stick Spillman

---

[1]The plaintiff has requested that the court invoke its supplemental jurisdiction authority and entertain his state-law causes of action.

threw from his vehicle.

Before the Court is the defendants' summary judgment motion, made pursuant to Rule 56 of the Federal Rules of Civil Procedure. The defendants maintain that Spillman's false arrest claim is not viable, because they had probable cause to effect his arrest. Furthermore, the defendants contend the plaintiff cannot establish his excessive force claim, because the amount of force they employed to effect his arrest was objectively reasonable and, in any event, they are shielded from liability to the plaintiff, on this claim and on his false arrest claim, under the doctrine of qualified immunity. In addition, according to the defendants, the plaintiff's claim that the City failed to train its police personnel appropriately, lacks evidentiary support and, thus, cannot be sustained. With respect to Spillman's remaining claim, that an officer attempted to place his life in jeopardy, the defendants allege they are entitled to judgement as a matter of law because the claim presents neither a Fourth nor a Fifth Amendment violation, as the plaintiff contends.

Spillman opposes the defendants' motion, which is analyzed below.

## II. BACKGROUND

On June 5, 2006, while operating his motor vehicle on Ashburton Avenue, in Yonkers, New York, Spillman pitched a lollipop stick from his vehicle on to the thoroughfare. This was observed by Wilt, as he and Ciruzzi were riding in their police radio car. Ciruzzi maneuvered the radio car alongside the automobile Spillman was driving and Wilt twice advised Spillman "you can save yourself a summons. Pick that up." Wilt concedes he had no authority to direct Spillman to fetch the discarded lollipop stick. Wilt recalls Spillman responded, by stating "Fuck you. It was only a lollipop stick." Wilt directed Spillman "to pull the car over" to the curb, and

the plaintiff complied. Thereafter, Wilt approached Spillman's vehicle, asked for Spillman's driver's license and automobile registration, in order that a summons could be issued to him for littering, and observed Spillman was not wearing a seatbelt. The plaintiff was advised he would also receive a summons for that offense. Spillman complied with the request for his driver's license and automobile registration. However, according to Wilt, as Spillman did so, he continued to utter profanities.

Wilt maintains that Spillman refused to accept the summonses. As a result, Wilt and Ciruzzi retreated to their radio car and requested that additional police officers be dispatched to the scene. Defendants McGartland, Atkins, Rubin and Pataky responded to the scene.

When Pataky arrived, Wilt re-approached Spillman's vehicle, noticed the engine was still running and directed the plaintiff to "shut the car off." Wilt recalls the plaintiff, whom he described as approximately six feet-four inches tall and approximately 200 pounds: (1) exited his vehicle; (2) responded to him "with profanity and very aggressive behavior;" and (3) refused to place his hands on the vehicle's trunk. At that point, Wilt informed Spillman he was being arrested for obstructing governmental administration.

Wilt and Ciruzzi contend they attempted to handcuff the plaintiff, after he exited his vehicle, but Spillman pulled his hand away, and a struggle ensued. Spillman punched Pataky in the face, at least twice. Pataky returned the blows, hitting Spillman repeatedly and maintains he was tackled to the ground by Spillman. Pataky contends that, while on the ground, his body was partially under the plaintiff's vehicle, and Spillman continued to strike and to kick him. According to Pataky, Spillman stated "I will kill you motherfucker." Pataky recalls that, at one point during this altercation, an officer yelled "the car is rolling," referring to Spillman's vehicle.

However, the plaintiff's automobile hit the bumper of Pataky's police vehicle and was prevented from rolling over Pataky.

Spillman contends he was given a summons for failing to wear a seatbelt, unjustifiably, which he accepted, and as he read it, an officer directed him to turn off his car, and he complied. According to Spillman, he exited his vehicle, and an officer grabbed his arm and began to push him toward the rear of the plaintiff's vehicle. In doing so, Spillman recalls the officer twisted his arm, in what Spillman perceived to be "an attempt to break it." Spillman alleges the officer yelled racial slurs and punched him "in the facial area and rear of the plaintiff's head." Spillman also alleges that all the officer defendants "began to beat the plaintiff with batons, their fist[s] and [to kick] the plaintiff [until] he fell to the ground."

Anthony Henry ("Henry") was a passenger in Spillman's automobile on June 5, 2006. Spillman submitted an affidavit from Henry in opposing the defendants' motion. Henry recalls that an officer "tossed several [c]itations in [Spillman's] face" and refused to respond when Spillman asked about the purpose of the citations; instead, the officer walked away. Shortly thereafter, five or six police vehicles arrived on the scene. According to Henry, the officer who issued the citations ordered Spillman out of his automobile, "began to handcuff Mr. Spillman, then said officer began to [a]ssault Mr. Spillman for no apparent reason . . . by beating Mr. Spillman about the [h]ead and [fa]ce and [r]ibs [b]rutally." Henry contends he observed this officer and several other officers strike Spillman, with metal batons and punch and kick him, as Spillman was on the ground, in handcuffs, "completely subdued."

As a result of his encounter with the officer defendants, Spillman contends he suffered a broken nose, a fractured rib, back injuries and extreme and continuing pain at the left side of his

body. In addition, the plaintiff maintains that staples had to be placed in his right leg and head, due to the "beating [he] received at the hands of the defendants." Medical records Spillman submitted, in opposition to the motion, do not corroborate the plaintiff's rib-fracture claim, but do corroborate the other injuries he suffered and the treatment administered to his leg and head. For his part, Wilt reports suffering a wrist injury, resulting in his being placed in light duty status, while Pataky contends he received a black eye and sustained a concussion.

The police reports that have been submitted by the defendants, in support of their motion, indicate Spillman was arrested for second-degree assault, obstructing governmental administration, fourth-degree criminal mischief and resisting arrest. A Westchester County grand jury returned an indictment against Spillman charging: (1) three counts of second-degree assault, one each in connection with the plaintiff's altercation with Wilt, Ciruzzi and Pataky; (2) fourth-degree criminal mischief; (3) obstruction of governmental administration; (4) resisting arrest; (5) littering; and (6) violating New York's Vehicle and Traffic Law. A jury trial followed, resulting in Spillman's conviction for: (i) one count of second-degree assault, arising out of his struggle with Pataky; (ii) resisting arrest; and (iii) littering. Thereafter, the plaintiff commenced this action, by filing a complaint, with the Clerk of Court, on March 15, 2007.

## III. DISCUSSION

*Standard of Review for Summary Judgment*

Summary judgment may be granted in favor of the moving party "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert.

denied, 524 U.S. 911, 118 S. Ct. 2075 (1998); Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006). When considering a motion for summary judgment, "[t]he court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." L.B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 [1986]).

The moving party bears the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law....' An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 [1986]). Once the moving party has satisfied its burden, the non-moving party must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

In order to defeat a motion for summary judgment, the non-moving party cannot merely rely upon the allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2510 (emphasis omitted). The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." Id. at 256, 106 S. Ct. at 2514. Summary judgment should only be granted if no rational jury could find in favor of the non-moving party.

See Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 721 (2d Cir. 1994).

As indicated above, the defendants contend they are entitled to summary judgment because: (1) they had probable cause to effect Spillman's arrest; (2) the amount of force they used to effect Spillman's arrest was objectively reasonable; (3) the doctrine of qualified immunity shields them from liability to the plaintiff; (4) Spillman's claim that the City failed to train its police personnel appropriately, is without evidentiary support; and (5) Spillman's remaining claim does not implicate the Fourth or Fifth Amendment to the Constitution.

*Section 1983*

"To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999) (citing Dwares v. City of New York, 985 F.2d 94, 98 [2d Cir. 1993]); Giordano v. City of New York, 274 F.3d 740, 750 (2d Cir. 2001). A municipality is deemed a person for the purpose of a § 1983 claim. See Vives v. City of New York, 524 F.3d 346, 350 (2d Cir. 2008). Therefore, a § 1983 claim may be made against a municipality for a policy(ies) it has adopted and employed that violates a plaintiff's constitutional right(s). See Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978).

A state official sued in his official capacity is not a person within the meaning of § 1983, and, consequently, is not subject to liability for depriving a person of constitutional rights. It is not clear, from the plaintiff's complaint, whether he is suing the officer defendants in their official or individual capacities. To the extent the plaintiff is suing the officer defendants in their

individual capacities, a § 1983 claim may be asserted against them. However, insofar as Spillman seeks to sue the officer defendants in their official capacities, such claims cannot be raised under § 1983. Inasmuch as it is uncontested that, at all times relevant to this action, the officer defendants were acting under color of state law, through and for the City of Yonkers Police Department, the issue that remains, in relation to the instant motion, is whether the conduct of the defendants amounts to a deprivation of Spillman's constitutional rights.

*False Arrest*

A § 1983 claim for false arrest rests on an individual's Fourth Amendment right to be "free from unreasonable seizures, including arrest without probable cause," and is "substantially the same as a claim for false arrest under New York law." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). To state a claim for false arrest, under New York law, a plaintiff must prove that: "(1) the defendant intended to confine [him], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003).

Regardless of whether the first three prongs are satisfied, the claim for false arrest will fail where a defendant establishes probable cause existed, as the existence of probable cause is a complete defense to an action for false arrest. See Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (citing Zanghi v. Inc. Vill. of Old Brookville, 752 F.2d 42, 45 [2d Cir. 1985]). A defendant police officer who arrests a person without a warrant is not liable for false arrest if the officer had probable cause to believe that the individual committed an offense. See Singer v. Fulton County Sheriff, 63 F.3d 110, 118-19 (2d Cir. 1995). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant

a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

New York Penal Law § 195.05 provides that

> [a] person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act, or by means of interfering, whether or not physical force is involved, with radio, telephone, television or other telecommunications systems owned or operated by the state, or a county, city, town, village, fire district or emergency medical service or by means of releasing a dangerous animal under circumstances evincing the actor's intent that the animal obstruct governmental administration.

Violating the above-noted statute is a class A misdemeanor. The record before the Court contains evidence that Spillman: (a) exited his vehicle and approached Wilt in an aggressive manner; (b) refused to obey a directive to place his hands on his vehicle, after refusing to accept summonses issued by a Yonkers police officer; (c) was advised he was being arrested for obstructing governmental administration; (d) resisted being handcuffed; and (e) struck law enforcement officers, who attempted to subdue him. Such conduct, by Spillman, would have provided the officers with probable cause to effect his arrest, notwithstanding the fact that Spillman was acquitted, at his trial, of obstructing governmental administration. This is so because "[p]robable cause does not require concrete proof of each element of a crime; it exists where the defendant is in possession of facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense." The facts known to the arresting officers and their observations during their encounter with Spillman, would lead a prudent person to believe Spillman had or was committing an offense. This would permit a finding that Wilt

and Ciruzzi had probable cause to effect Spillman's arrest.

Spillman has a different recollection of his June 5, 2006 encounter with the officer defendants and contests their assertions about the extent to which he complied with their directives and the belligerent nature in which he approached them, after exiting his vehicle. Notwithstanding the parties' differing recollections of the incident, after being arrested and indicted, inter alia, for second-degree assault, obstructing governmental administration and resisting arrest, Spillman was convicted, by a jury, for second-degree assault, resisting arrest and littering. "Under state law, a plaintiff charging false arrest 'can under no circumstances recover if he was convicted of the offense for which he was arrested. [] The Second Circuit[, in Cameron v. Fogarty, 806 F.2d 380 (2d Cir. 1986),] extended this principle to suits brought under § 1983, holding that 'where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action which asserts a claim of false arrest.'" Luckerson v. Hibbert, No. 88 Civ. 5190, 1991 WL 115144, at *1 (S.D.N.Y. June 20, 1991)(citations omitted). The Cameron doctrine applies when a plaintiff is convicted for at least one of the offenses for which he was arrested. See Luckerson, 1991 WL 115144, at *2. Accordingly, in the circumstance of the case at bar, where Spillman suffered a conviction for more than one of the offenses for which he was arrested, the defendants are entitled to summary judgment on the plaintiff's false-arrest claim.

*Excessive Force*

The Fourth Amendment proscribes the use of excessive force by police officers. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at

stake." Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871 (1989) (internal quotation marks and citations omitted); see also Phelps v. Szubinski, 577 F. Supp. 2d 650, 661 (E.D.N.Y. 2008) (quoting Graham). Application of the "reasonableness" standard in this context "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S. Ct. at 1872; see also Amnesty America v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004) (quoting Graham). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Phelps, 577 F. Supp. 2d at 661 (quoting Graham, 490 U.S. at 396, 109 S. Ct. at 1872).

The facts and circumstances surrounding the plaintiff's June 5, 2006 encounter with the officer defendants are disputed. Spillman contends that, after refusing to retrieve, from the roadway, the litter he discarded from his vehicle, he complied with an officer's directive to maneuver his automobile out of traffic and bring it to a stop at the curb. According to Spillman, he accepted a summons issued unjustifiably by the officer and, after exiting his vehicle, the officer seized his arm and twisted it, such that Spillman believed it would be broken. Thereafter, Spillman recalls, the officer defendants began to assault him with batons and to kick and to punch him, until he fell to the ground. As a result of this assault, Spillman suffered a broken nose, and experienced extreme pain to the left side of his body. In addition, Spillman needed surgical staples to close wounds to his head and leg. Spillman's recollection of the assault he attributes to the officer defendants is corroborated to a great extent by Henry, an eyewitness to

the incident.

Officers Wilt, Ciruzzi and Pataky contend Spillman was the aggressor. According to the officers, Spillman exited his vehicle, approached Wilt using profanity and exhibiting "very aggressive behavior." Spillman resisted being handcuffed, by pulling his hand away, punched Pataky in the face, tackled him to the ground and continued to strike and kick him, and threatened to kill Pataky. Pataky received a black eye and sustained a concussion, while Wilt's wrist was injured, requiring him to be placed in light duty status.

In order to determine whether the force used to effect an arrest was reasonable and, thus, not a violation of the Fourth Amendment, a "factfinder must determine whether, in light of the totality of the circumstances faced by the arresting officer, the amount of force used was objectively reasonable at the time." Inasmuch as the inquiry is fact-specific, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty America, 361 F.3d at 123.

As noted above, when a summary judgment motion is being considered, a court is required to view the evidence in the light most favorable to the party against whom summary judgment is sought. Moreover, the court must draw all reasonable inferences in the non-moving party's favor. Applying that rule here, the Court finds that Spillman's allegations are sufficient to create issues of fact respecting the objective reasonableness of the degree of force used by the officer defendants, during their encounter with him, on June 5, 2006. The plaintiff's excessive-force claim requires credibility determinations to be made. Such determinations are typically the province of a jury, see Azrielli v. Cohen Law Offices, 21 F.3d 512, 517 (2d Cir. 1994); this

militates against granting summary judgment to the defendants on the plaintiff's excessive-force claim. See Amnesty, 361 F.3d at 123-24; Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999).

The Court is mindful that the officer defendants have asserted the affirmative defense of qualified immunity, with respect to Spillman's excessive force claim. As explained above, whether the force used in effecting an arrest is excessive, turns on its reasonableness. Therefore, "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999); see Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998).[2]

*Failure to Train Police Personnel*

Spillman alleges the City failed to train the officer defendants resulting in their effecting a false arrest of him and employing excessive force during the arrest. As noted above, "[t]o hold [the] city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Spillman did not assert a Monell claim explicitly. However, inasmuch as he is a pro se litigant, the Court must read his submissions liberally and interpret them so as "to raise the strongest arguments that they suggest." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)(citation omitted). Having done so, the Court finds that Spillman's allegation, that

---

[2]The officer defendants also seek summary judgment, based on the doctrine of qualified immunity, with respect to Spillman's false-arrest claim. However, in light of the Court's determination that the defendants are entitled to summary judgment on Spillman's false-arrest claim, because he was convicted for at least one of the offenses for which he was arrested, no analysis of the doctrine of qualified immunity, as it relates to the plaintiff's false-arrest claim, needs to be undertaken.

the City failed to train the officer defendants is, in essence, a Monell claim.

Failure to train police personnel may make a municipality liable to a plaintiff in a § 1983 action only where such failures "amount[] to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 1204 (1989). In order to establish deliberate indifference by the City, Spillman must demonstrate that: (i) "a policymaker knows 'to a moral certainty' that her employees will confront a given situation [; (ii)] the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation [; and (iii)] the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Walker v. City of New York, 974 F.2d 293, 297-98 (2d Cir. 1992). In addition, "at the summary judgment stage, [a plaintiff] must identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." Green v. City of New York, 465 F.3d 65, 81 (2d Cir. 2006). Spillman has not presented any evidence to the Court that satisfies the obligations imposed upon him by Walker and Green to establish deliberate indifference by the City to the rights of persons, including himself, with whom the officer defendants would come into contact.

To the extent Spillman is asserting a cause of action against the City, under New York law, because he was injured, due to negligent training of the officer defendants by the City, asserting such a cause of action would be to no avail. "In a negligent training claim, the plaintiff must demonstrate deficiencies in the training of employees that, if corrected, could have avoided the alleged harm." Carter v. Port Authority of New York and New Jersey, No. 03 Civ. 8751,

2004 WL 2978282, at *5 (S.D.N.Y. Dec. 20, 2004) (citing Barr v. Albany County, 50 N.Y.2d 247, 258, 428 N.Y.S.2d 665, 671 [1980]). Spillman has offered no evidence regarding the training policies of the City. Consequently, he cannot prevail on a negligent-training cause of action. Therefore, summary judgment for the City, on Spillman's allegation that it failed to train the officer defendants, is warranted.[3]

*Life Placed in Jeopardy*

Spillman contends an officer attempted to place his life in jeopardy, and his Fourth and Fifth Amendment rights, as well as New York law, were violated, because one of the officer defendants directed him to enter into rush hour traffic to retrieve a lollipop stick he threw from his vehicle.

To assert a claim under § 1983 properly, a plaintiff is required to allege that the challenged conduct was attributable, at least in part, to a person who was acting under color of state law and, further, that the conduct deprived the plaintiff of a right secured to him by the Constitution of the United States. "The Fourth Amendment protects against 'unreasonable searches and seizures.'" United States v. McCargo, 464 F.3d 192, 196 (2d Cir. 2006) (quoting U.S. Const. amend. IV). Directing Spillman to enter traffic to recover litter, as he contends he was directed to do by a police officer, does not implicate the Fourth Amendment. Moreover, to the extent Spillman is relying upon the Fifth Amendment, because he believes his life was potentially placed in jeopardy by the officer's directive, his reliance is misplaced.

---

[3]The City would also be entitled to summary judgment on the negligent-training cause of action because the record does not reflect that Spillman filed a notice of claim, which is a prerequisite to commencing a tort action to recover, on such a claim, in New York. See New York General Municipal Law § 50-e; see also Hardy v. New York City Health & Hospitals Corp., 164 F.3d 789, 794 (2d Cir. 1999)

The Fifth Amendment "applies only to proceedings by the Federal Government" and the "jeopardy" discussed in that amendment is double jeopardy. The Fifth Amendment provides a proscription against the Federal Government commencing a second prosecution under its authority "after a first trial for the same offense under the same authority," has taken place. United States v. Ng, 699 F.2d 63, 69 (2d Cir. 1983). New York's Constitution contains similar double-jeopardy language. Article I § 6 of New York's Constitution provides that "[n]o person shall be subject to be twice put in jeopardy for the same offense." Spillman has presented no evidentiary facts from which one could conclude that the officer's directive, to retrieve a discarded lollipop stick, subjected him to a second prosecution by the state, for the offenses which were the subject of the criminal trial convened because of Spillman's June 5, 2006 arrest.

To the extent that Spillman's reference to the Fifth Amendment is directed to its due process clause, the instant claim would still not be viable, as the due process clause of the Fifth Amendment, which guards against the deprivation of life, liberty or property, on insufficient process, applies only to actions of the Federal Government, and no action by the Federal Government has been alleged by Spillman to have been taken against him. See Dusenbery v. United States, 534 U.S. 161, 167, 122 S. Ct. 694, 699 (2002); Noel v. Chapman, 508 F.2d 1023, 1031 n.2 (2d Cir. 1975). Although Article 1 § 6 of New York's Constitution provides that no person can be deprived of life, liberty or property without due process of law, Spillman has neither alleged he suffered a deprivation, nor provided any evidence establishing he suffered a deprivation, as a result of the officer's conduct. Therefore, the defendants are entitled to

summary judgment on the instant claim.[4]

## IV. RECOMMENDATION

For the reasons set forth above, I recommend that the defendants' motion for summary judgment, Docket Entry No. 28, be granted, except as it relates to the plaintiff's claim that excessive force was employed against him, at the time of his arrest.

* * *

N.B. Any unpublished opinion to which citation has been made is being provided to the plaintiff with a copy of this report and recommendation.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Batts. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d

---

[4]While rights secured by the Fifth Amendment are made applicable to the states via the Fourteenth Amendment, Spillman did not assert a Fourteenth Amendment violation in his complaint. In any event, if the instant claim were analyzed under the Fourteenth Amendment, no different result would emerge.

Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 58-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237 (2d Cir. 1983).

Dated: New York, New York
January 8, 2010

Respectfully submitted:

Kevin Nathaniel Fox
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies mailed to:

Alexander Spillman
Frank J. Rubino, Esq.